This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38584**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARCELLO SILVA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}** Defendant appeals his conviction for possession of a deadly weapon by a prisoner. We issued a notice of proposed summary disposition proposing to affirm, and Defendant has responded with a timely memorandum in opposition, which we have duly considered. We remain unpersuaded, and we therefore affirm Defendant's conviction.

**{2}** Defendant first argues that the district court erred in denying his motion to suppress or, alternatively, for an adverse evidence instruction. [MIO 9-15] The facts and proceedings relevant to this issue are as follows. Defendant was an inmate at the Lincoln County Detention Center (LCDC). On August 20, 2018, he was transported by

Corrections Officer Felix Garcia to a court hearing. [MIO 2] On their return, Officer Garcia decided to conduct a search of Defendant's cell, whereupon he discovered a toothbrush with a razor blade attached to it with electrical tape in plain view in Defendant's cell. [MIO 2] Defendant was charged with one count of possession of a deadly weapon by a prisoner. [MIO 2; RP 1]

{3}     During pretrial interviews, defense counsel became aware that the LCDC has surveillance cameras in operation at all times, and the area around Defendant's cell was video recorded for the entirety of the day in question. [MIO 2-3, 12] On March 12, 2019, Defendant filed a motion to suppress all evidence obtained as a result of the search of his cell, pursuant to *State v. Chouinard*, 1981-NMSC-096, 96 N.M. 658, 634 P.2d 680, and *State v. Ware*, 1994-NMSC-091, 118 N.M. 319, 881 P.2d 679. [RP 79] In the motion, Defendant argued that the State had failed to turn over the video evidence, and the video recording from the day should have shown whether or not anyone else was in or near Defendant's cell prior to the search as well as the search itself. [RP 80] Defendant also argued that this would be relevant to show whether or not anyone else was in the area, as Officer Garcia had stated that no one was allowed near Defendant's cell prior to the search. [RP 81]

{4}     The district court held a hearing on the motion on March 13, 2019. [MIO 5; RP 110] At the hearing, the State informed the district court that it did not have the recording because LCDC did not turn over any evidence. A witness from LCDC also testified at the hearing that the video had been recorded over after a period of time, as was routine, and therefore had not been preserved. [MIO 5, 12] The witness also testified that the video would not have shown anyone in Defendant's cell on the day in question other than Defendant and Officer Garcia. [MIO 5] The district court entered an order denying the motion to suppress on April 15, 2019. [MIO 7]

{5}     At trial, Officer Garcia testified that after transporting Defendant back from court on August 20, 2018, he searched Defendant's cell and found a toothbrush with a razor blade attached in plain sight. Officer Garcia testified that, other than himself and Defendant, no one had access to the cell. [MIO 7] Additionally, the jury heard evidence from the State's expert witness that three DNA profiles were discovered on the toothbrush. The major DNA profile belonged to Defendant, and the other two profiles were not identified. [MIO 7-8] The expert further testified that it was unlikely that Defendant's DNA on the toothbrush was the result of transfer from Officer Garcia or anyone else. [MIO 8] Defendant's DNA expert testified that it was possible that Defendant's DNA was transferred to the toothbrush by Office Garcia or another inmate. [MIO 8]

{6}     Defendant argues that the district court abused its discretion in denying his motion to suppress or his alternative request for an adverse jury instruction. We review a district court's denial of a motion to suppress or dismiss the charges for lost evidence under an abuse of discretion standard. *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027. Both Defendant's argument that the evidence that the videotape might have impeached the State's evidence and his argument that he was entitled to an

adverse evidence instruction apply the three-part test our Supreme Court set out in *Chouinard*. Under the *Chouinard* test, courts consider whether (1) the state breached a duty or intentionally deprived the defendant of evidence, (2) the lost or destroyed evidence is material, and (3) the defendant suffered prejudice. 1981-NMSC-096, ¶ 16. "When evidence is lost in a way that does not involve bad faith, the defendant bears the burden of showing materiality and prejudice before sanctions are appropriate." *State v. Pacheco*, 2008-NMCA-131, ¶ 30, 145 N.M. 40, 193 P.3d 587. Where, as in this case, the loss of evidence is known before trial, "there are two alternatives: Exclusion of all evidence which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import." *Chouinard*, 1981-NMSC-096, ¶ 23. The choice between these alternatives depends on the district court's assessment of materiality and prejudice. *Id.*

**{7}** We will assume for purposes of this appeal that LCDC was required to preserve the video surveillance evidence. *See Pacheco*, 2008-NMCA-131, ¶ 28 (stating that "[i]t is generally understood that the [s]tate has a duty to preserve evidence obtained during the investigation of a crime"). However, there is no evidence in the record, nor did Defendant argue below, that the breach of this duty was intentional. "When evidence is lost in a way that does not involve bad faith, the defendant bears the burden of showing materiality and prejudice before sanctions are appropriate." *Id.* ¶ 30. The district court is in the best position to make this evaluation, which is influenced "by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other considerations." *Chouinard*, 1981-NMSC-096, ¶ 25.

**{8}** We therefore consider Defendant's showing of materiality and prejudice. *See Duarte*, 2007-NMCA-012, ¶ 15 ("The test for materiality, the second factor, is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (internal quotation marks and citation omitted)). In his motion to suppress, Defendant argued that the evidence was material because it would be relevant to impeach the State's evidence regarding the search and could have shown potential DNA contamination as a result of the search. [RP 82] With respect to prejudice, Defendant similarly argued that the loss of the video deprived him of the opportunity to rebut Officer Garcia's account of where the item was found, how it was found, and whether any other inmates had access to Defendant's cell. [RP 82] Defendant also contended that the loss of the video deprived him of the ability to discover whether other unspecified exculpatory evidence existed. [RP 82]

**{9}** Significantly, however, there was no timeline established demonstrating when the weapon must have been introduced into Defendant's cell. Therefore, even if the videotape from the date in question had been available, the record does not show that it would have provided material evidence regarding how the weapon came to be in the cell. *See id.* ¶ 11 (holding the district court did not abuse its discretion in deciding not to exclude evidence where the defendant "did not show that had the videotape been available it would have undercut the prosecution's case or that the tape's absence materially affected a determination of guilt or innocence"). Moreover, Defendant's

contention that the video could have provided some sort of exculpatory evidence is speculative. *See State v. Branch*, 2018-NMCA-031, ¶¶ 49, 52, 54, 417 P.3d 1141 (concluding, in light of "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," that the district court did not err in denying the defendant's request for a lost evidence jury instruction (internal quotation marks and citation omitted)).

**{10}** We also find it significant that Defendant was able to cross-examine Officer Garcia at trial regarding the lost evidence, and there was DNA evidence establishing Defendant as the major contributor to the samples on the weapon. [MIO 7-8] *See Chouinard*, 1981-NMSC-096, ¶ 25 ("The importance of the lost evidence may be affected by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other considerations."). Under these circumstances, we conclude that the district court did not abuse its discretion by denying Defendant's request to exclude Officer Garcia's testimony or his request for a lost evidence jury instruction.

**{11}** Defendant next argues that the district court erred in allowing the state to present extrinsic evidence to impeach the defense DNA expert witness. [MIO 16-20] This occurred after the defense expert witness was asked on cross-examination whether he had ever been terminated from a previous position, to which he responded that he had not. [MIO 17] Over defense objection, the State was permitted to recall its expert witness who testified that she remembered the defense expert testifying in another case that he had been involuntarily separated from a position. [MIO 17] *See State v. Astorga*, 2015-NMSC-007, ¶ 40, 343 P.3d 1245 (observing that in evaluating the admissibility of a prior inconsistent statement under Rule 11-613(B) NMRA, "[t]he question . . . is simply whether the substance of the witness's trial testimony is inconsistent with the prior statement" and even if requirements of Rule 11-613(B) are met, admissibility is "subject to the district court's broad discretion under Rule 11-403 [NMRA]" (emphasis omitted)). However, on cross-examination, the State's expert could not recall any specific details about the prior testimony. [MIO 17]

**{12}** Defendant argues that this evidence was irrelevant to any issue at trial, and the only issue before the jury was whether he actively or constructively possessed a deadly weapon. Defendant asserts that this question came down to an assessment of credibility between the expert witnesses regarding the possibility of transfer to explain the presence of Defendant's DNA on the weapon. [MIO 17-18] Defendant also argues that the evidence, even if relevant, was more prejudicial than probative under Rule 11-403. *See id.* (providing the court with authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

**{13}** "We examine the admission or exclusion of evidence for abuse of discretion, and the [district] court's determination will not be disturbed absent a clear abuse of that discretion." *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85. "An

abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{14}** Defendant has not stated whether the district court explained the basis for its ruling rejecting his arguments on relevance and prejudice. However, we note that, to the extent this case required the jury to make a credibility assessment of the expert witnesses, New Mexico recognizes that prior inconsistent statements are inherently relevant to impeaching a witness's credibility. *See Astorga*, 2015-NMSC-007, ¶ 31; *see also State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804 ("[I]t is generally true that a witness's prior inconsistent statements may be used to cast doubt on the witness's credibility."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. We therefore perceive no error in the district court overruling Defendant's relevance objection.

**{15}** With respect to Defendant's argument that the district court erred in its weighing of the probative value of the evidence against the potential prejudice, we note that Rule 11-613(B) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Defendant does not argue that its expert was denied the opportunity to deny or explain the statement; however, Defendant does not explain the substance of its expert's response to the extrinsic evidence. Defendant does state, however, that he was able, through cross-examination, to demonstrate that the State's expert had very little specific knowledge regarding the substance of the prior inconsistent statement or circumstances surrounding its occurrence, suggesting that any prejudice resulting from introduction was likely mitigated. Accordingly, we see no basis on which to conclude that the district court abused its broad discretion under Rule 11-403 in ruling that the probative value of the evidence was not outweighed by the prejudice. *See State v. Anderson*, 2016-NMCA-007, ¶ 21, 364 P.3d 306 ("District courts have broad discretion when applying Rule 11-403.").

**{16}** For these reasons, we reject Defendant's assertions of error and affirm the district court.

**{17}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**