This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40590**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellant,

v.

**ADAM LAFRANCE,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Perlata-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**    The district court granted Defendant Adam LaFrance's motion to suppress all evidence resulting from a traffic stop in which Defendant was a passenger. The State appeals arguing the district court lacked sufficient evidence to conclude the arresting officer had unlawfully expanded the scope of his investigation when questioning Defendant. We affirm, holding that the officer asked impermissible questions beyond the

scope of the initial reason for the stop and did not otherwise develop independent reasonable suspicion. *See State v. Tuton*, 2020-NMCA-042, ¶ 10, 472 P.3d 1214.

**BACKGROUND**

**{2}**     Deputy Brandon Salazar was patrolling I-40 near Gallup, New Mexico when he stopped a vehicle for following a semitruck too closely, contrary to NMSA 1978, Section 66-7-318(A) (1978, amended 2021). Deputy Salazar approached the vehicle where Defendant was the passenger and stated he would give the driver a warning for following too closely. The driver offered Deputy Salazar his driver's license, but explained that the vehicle was rented, and therefore not registered in his name. Deputy Salazar requested the rental agreement and the driver said he would pull it up on his phone. Deputy Salazar asked the driver to go to his patrol car so that he could check the driver's identification before he would let the two men go. After about ten seconds, the driver left his vehicle and sat down in the passenger's seat of Deputy Salazar's patrol car.

**{3}**     As the driver continued to search for the rental agreement on his phone, Deputy Salazar questioned him about his travel. He asked the driver where he and Defendant were coming from, and the driver replied that they had come from California. Deputy Salazar then asked how long the two men had been there, and why they had travelled to California. The driver explained they had been there for two days for a painting job. The officer pressed further, asking where in California the driver and Defendant had been, and seeking specific details about the painting job. Deputy Salazar then reiterated to the driver that he would only issue a warning for following too close, and mentioned that he would need to obtain the vehicle identification number (VIN) from the rental. He asked the driver to remain next to his patrol car while he recorded the VIN.

**{4}**     When Deputy Salazar approached the driver's vehicle, he also questioned Defendant about their trip. Deputy Salazar asked Defendant where the two men were coming from, what they had been doing in California, how long they had been there for, and what kind of job the driver had performed in California. Defendant provided answers that were inconsistent with the answers the driver had given to Deputy Salazar.

**{5}**     Deputy Salazar asked the driver to return back to the passenger seat in the patrol car, asked the driver if there were any illegal substances in the vehicle, and requested consent to search the vehicle. The driver initially consented and then declined. Deputy Salazar detained the two men in order to apply for a search warrant, suspecting that they were involved in drug trafficking, noting that they had provided inconsistent stories. After obtaining a warrant and searching the vehicle, Deputy Salazar found a backpack in the trunk that contained a large bag of methamphetamine. Defendant was charged with trafficking by possession with intent to distribute, and conspiracy to commit trafficking, pursuant to NMSA 1978, Sections 30-31-20 (2006) and 30-28-2 (1979).

**{6}** Defendant filed a motion to suppress all evidence resulting from the traffic stop, arguing that Deputy Salazar had improperly expanded his investigation in violation of the Fourth Amendment of the United States Constitution, and Article II, Section 10 of the New Mexico Constitution. The district court granted Defendant's motion, finding in relevant part:

1. Deputy Salazar knowingly and deliberately embarked upon a fishing expedition when speaking with . . . Defendant about the latter's recent travel history and the reasons behind it;

2. Deputy Salazar conducted an investigation of . . . Defendant's recent actions, designs and purposes that was utterly unrelated to the original reason for the traffic stop and the legitimate law enforcement concerns emanating therefrom;

3. The conclusion reached by . . . Deputy [Salazar] that . . . Defendant was engaged in the transport of illegal drugs because the story of his travels and objectives was incredible, is itself divorced from reality and the product of a determined and concealed desire to conduct a search rather than a reasoned deduction based on the evidence which allows for the formulation of probable cause.

The State appealed.

## DISCUSSION

**{7}** "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "In the absence of factual findings, when the evidence conflicts, we consider the evidence that supports the district court's ruling, and we draw all inferences and indulge all presumptions in favor of that ruling." *Tuton*, 2020-NMCA-042, ¶ 8 (text only) (citation omitted). "Our review of a district court's determination of whether reasonable suspicion existed is based on the totality of the circumstances." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. A law officer may develop reasonable suspicion based on "specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Simpson*, 2016-NMCA-070, ¶ 11, 388 P.3d 277 (internal quotation marks and citation omitted). "The burden to show reasonableness is on the [s]tate." *Leyva*, 2011-NMSC-009, ¶ 30.

**{8}** We limit our review to determining whether Deputy Salazar's conduct was reasonable under Article II, Section 10 of the New Mexico Constitution because it provides greater protection than the Fourth Amendment of the United States Constitution in this instance. *See id.* ¶ 55 ("[The analysis in *State v. Duran*, 2005-NMSC-034, ¶ 37, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by Leyva*, 2011-

NMSC-009, ¶¶ 17, 55], requiring a reasonable justification for the initial stop and that all questions asked during the stop be reasonably related to the reason for the stop or otherwise supported by reasonable suspicion, ensures that investigating officers do not engage in 'fishing expeditions' during traffic stops. This approach comports better with the broader protections provided under Article II, Section 10, which we have determined are best analyzed under a case-by-case approach rather than bright-line temporal tests developed under the Fourth Amendment.").

**{9}** "[U]nder Article II, Section 10, both the duration and [the] scope of a stop must be reasonable under the circumstances and . . . even questions that do not prolong the encounter are improper if they are not reasonably related to the reason for the stop or otherwise supported by reasonable suspicion." *State v. Bell*, 2015-NMCA-028, ¶ 16, 345 P.3d 342 (alteration, internal quotation marks, and citation omitted). "Unrelated questions are only justified (1) if supported by independent reasonable suspicion, (2) for reasons of officer safety, or (3) if the interaction has developed into a consensual encounter." *Tuton*, 2020-NMCA-042, ¶ 10 (internal quotation marks and citation omitted). An officer may ask "limited questions about travel plans" when those questions are "reasonably related to the initial stop." *Duran*, 2005-NMSC-034, ¶ 37; *see State v. Van Dang*, 2005-NMSC-033, ¶¶ 1, 15, 138 N.M. 408, 120 P.3d 830 (holding that questions about travel plans were reasonable because the driver's name was not on a vehicle rental contract, which gave "the officer . . . a right to investigate whether the vehicle was stolen").

**{10}** The State initially argues that the standard of reasonable suspicion for "an *expansion* of an investigatory stop fundamentally differs from the constitutional reasonableness of an *initial* investigatory stop because the initial governmental intrusion on personal privacy and liberty is greater than an expansion of an initial investigation." (Emphasis added.) More specifically, the State argues that the standard for reasonable suspicion to expand an investigation is essentially lower because expansion does not require either specific or individualized suspicion of criminal activity, and because expansion "is evaluated in terms of the evolving nature of the stop relative to whether the actions taken are reasonable to resolve or explain the suspicious circumstances."

**{11}** Reasonable suspicion required to expand an investigative stop "need not necessarily be of a specific crime." *Leyva*, 2011-NMSC-009, ¶ 23. Similarly, an officer may develop reasonable suspicion to investigate more than one individual in *limited* circumstances. *See, e.g.*, *State v. Funderburg*, 2008-NMSC-026, ¶ 28, 144 N.M. 37, 183 P.3d 922 (deeming the expanded questioning of the driver of a vehicle reasonable after the passenger—who police suspected had committed a separate crime—admitted to having evidence of a drug crime in his pocket). Expansion of an investigation does entail "a graduated response to the evolving circumstances of a situation." *Id.* ¶ 16. Nevertheless, we are unpersuaded that the standard for reasonable suspicion to expand an investigation is less than that of reasonable suspicion to initiate an investigation. In either case, "[r]easonable suspicion must consist of more than an officer's hunch that something is amiss; it requires objectively reasonable indications of criminal activity." *Leyva*, 2011-NMSC-009, ¶ 23. "A law enforcement officer must have

reasonable and articulable suspicion that other criminal activity has been or may be afoot in order to expand an investigation." *Id.* ¶ 59 (internal quotation marks and citation omitted).

**{12}** Here, our review requires us to determine if Deputy Salazar's questions were reasonably related to the initial stop, or if he had otherwise developed independent reasonable suspicion to question Defendant. The State does not argue that Deputy Salazar questioned Defendant for reasons of officer safety or because the interaction had developed into a consensual encounter. Our review of the record shows the same.

**{13}** Deputy Salazar pulled the driver over for following too close to a semitruck on the interstate. He told the driver he would issue a warning, and asked the driver to come to his patrol vehicle to verify his identification and the information in the rental car agreement. Deputy Salazar then asked a series of questions about travel plans unrelated to the rental agreement or initial stop: where in California the driver and Defendant had been, what kind of painting job they had done, how big the room they painted was, how much they had been paid, when they had arrived in California, who the two men worked for, how they would find their jobs, what color they had painted the room in California, and if they had done any sightseeing during the trip. Deputy Salazar then asked Defendant a series of similar questions.

**{14}** These questions were not related to the initial reason for the stop—following a semitruck too closely. Although an officer may ask some questions, the questions must be "reasonably related to scope of the initial stop." *Duran*, 2005-NMSC-034, ¶ 37. As such, Deputy Salazar's extensive questioning of Defendant exceeded the degree permissible under the New Mexico Constitution. *See Tuton*, 2020-NMCA-042, ¶ 12.

**{15}** We must next determine whether Deputy Salazar otherwise developed independent reasonable suspicion to expand his investigation and ask Defendant questions that were unrelated to the original stop. "Courts defer to the training and experience of the officer when determining whether particularized and objective indicia of criminal activity existed." *Leyva*, 2011-NMSC-009, ¶ 23 (internal quotation marks and citation omitted). Although we defer to an officer's training and experience, "[r]easonable suspicion develops when the officer becomes aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Funderburg*, 2008-NMSC-026, ¶ 14 (internal quotation marks and citation omitted).

**{16}** Deputy Salazar testified that he had experience and training specific to identifying smugglers of narcotics. He stated that he initially developed reasonable suspicion when he asked the driver to exit the vehicle, but "both occupants stayed in the vehicle for roughly fifteen to twenty seconds, and communicated, which [he] believed was them getting their stories situated before exiting." However, the lapel camera footage shows that the driver spent no more than ten seconds in the vehicle after Deputy Salazar asked him to come to the patrol vehicle. During that brief interval, neither the driver nor Defendant made any overt, furtive movements by reaching into

areas of the vehicle. *Cf. Leyva*, 2011-NMSC-009, ¶ 60 (holding an officer possessed reasonable suspicion after witnessing the defendant's furtive movements appearing to hide something under the passenger's seat before stopping his vehicle).

**{17}** Deputy Salazar also testified that the driver appeared uneasy in his patrol vehicle, stating that he had "short, shallow breathing, which is a sign of nervousness." However, our Courts have declined to "equat[e] simple nervousness with reasonable suspicion." *State v. Neal*, 2007-NMSC-043, ¶ 29, 142 N.M. 176, 164 P.3d 57 (holding that a defendant's "fidgety and nervous demeanor . . . did not suffice to create reasonable suspicion" (internal quotation marks and citation omitted)). Rather, "[d]emeanor is only one factor to be considered in weighing the totality of the circumstances, and those circumstances as a whole must be reasonably connected to the expansion of an investigation." *Tutton*, 2020-NMCA-042, ¶ 14. Nervousness alone cannot justify reasonable suspicion. *Cf. State v. Pacheco*, 2008-NMCA-131, ¶ 4, 145 N.M. 40, 193 P.3d 587 (holding that an officer had reasonable suspicion—in part—because the "driver's hand was visibly trembling, and he appeared uncommonly nervous").

**{18}** The State finally argues Defendant's inconsistent responses gave Deputy Salazar reasonable suspicion that he and the driver were involved in some other criminal activity. However, Deputy Salazar only could have asked those questions if he had reasonable suspicion to do so. By the time Defendant had provided inconsistent answers, Deputy Salazar had unlawfully expanded the scope of his investigation. By way of comparison, he had no reason to believe the two men were travelling in a stolen rental vehicle before asking his questions, *cf. Van Dang*, 2005-NMSC-033, ¶ 15, nor did he witness anything about the vehicle or Defendant's behavior that would have justified such extensive questioning. *Cf. Duran*, 2005-NMSC-034, ¶ 37 (concluding it was reasonable for an officer to question the defendant about travel when the vehicle had a misplaced registration tag, suspicious tools in the back and smelled of gasoline); *Leyva*, 2011-NMSC-009, ¶ 61 (concluding it was reasonable for the officer to inquire into the presence of weapons or other contraband in the vehicle after witnessing the defendant appear to hide an unknown item under the seat of his car while being pulled over); *Pacheco*, 2008-NMCA-131, ¶¶ 16-17 (concluding it was reasonable for an officer to question the defendant where the vehicle smelled heavily of air freshener, perfume, or aftershave, and the backseat of the car had been removed). Furthermore, Deputy Salazar did not have a valid reason to expand his investigation to Defendant, then a passenger of the vehicle, and not subject to the reason for the initial stop. *See Funderburg*, 2008-NMSC-026, ¶ 28 (deeming the expanded questioning of the driver of a vehicle reasonable after the passenger, who was suspected of committing a crime unrelated to stopping the driver, admitted to having drugs in the driver's vehicle). *See also State v. Jason L.*, 2000-NMSC-018, ¶ 22, 129 N.M. 119, 2 P.3d 856 (declining to hold that an officer possessed reasonable suspicion under the Fourth Amendment when the "[s]tate had not established individualized, particularized suspicion that [the defendant—who was not the subject to the initial investigation—] had committed or was about to commit a crime").

**{19}**   We therefore hold that the district court reasonably concluded that Deputy Salazar had embarked on a fishing expedition when asking Defendant questions unrelated to the original reason for the traffic stop. *See Leyva*, 2011-NMSC-009, ¶ 55.

**CONCLUSION**

**{20}**   For the foregoing reasons, we affirm.

**{21}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**