# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 27, 2017 _____

**NO. 34,783**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**JOHNNY ORTIZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellant

Law Offices of Jennifer J. Wernersbach, P.C.
Jennifer J. Wernersbach, P.C.
Albuquerque, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}      The State appeals the district court's order suppressing evidence seized from Defendant Johnny Ortiz's vehicle. The district court suppressed the evidence because it concluded that what began as an investigatory detention of Defendant impermissibly ripened into a de facto arrest in violation of the Fourth Amendment right to be free from unreasonable seizure. We agree with the district court and affirm.

**BACKGROUND**

{2}      On the morning of June 1, 2012, Sandia Resort & Casino (the casino) security personnel came into possession of a found wallet. Upon searching its contents for identifying information, a security dispatcher found Defendant's name and an unidentified female's name whose contact information was in the wallet. The dispatcher contacted the female, who reported that her wallet had been stolen at the casino. Shortly thereafter, Defendant inquired with security about the wallet, at which point the dispatcher searched the casino's private security database to see if Defendant had any prior infractions at the casino. The dispatcher discovered a person with Defendant's name who had been banned from the casino in 2007.

{3}      The dispatcher then contacted the Pueblo of Sandia Police Department (PSPD) to report a possible criminal trespass in progress. PSPD Detective James Chavez and

Officer Stephen Garcia responded to the dispatch. Detective Chavez arrived at the casino first and proceeded to the security office, planning to confirm Defendant's ban with security personnel. Before he could do so, however, security informed him that surveillance video showed Defendant walking out the main doors of the casino.

{4}     Detective Chavez, electing to attempt to intercept Defendant before Defendant could leave the premises, left the security office before he was able to confirm Defendant's ban. As Detective Chavez ran through the casino, security personnel relayed information about Defendant's location to him over the phone. Detective Chavez, in turn, communicated that information to Officer Garcia via radio so that Officer Garcia could pursue Defendant in his patrol car. Security personnel observed Defendant walk toward the parking lot, enter a white vehicle, and proceed eastbound through the parking lot. Officer Garcia located the vehicle, initiated his emergency equipment, and effectuated a stop in the casino parking lot.

{5}     Detective Chavez, who witnessed the stop, arrived on foot and made contact with Defendant. Detective Chavez patted down Defendant, handcuffed him, and placed him in the back of Officer Garcia's car in what Detective Chavez described as "just detention, investigative detention" so that he could confirm Defendant's ban with security personnel in order to determine if there was probable cause to arrest Defendant for criminal trespass. It took approximately ten minutes for Detective

2

Chavez to receive confirmation of Defendant's ban. Detective Chavez testified that after the ban was confirmed, he placed Defendant under arrest, called for a tow truck, and commenced an inventory search of Defendant's vehicle. The search produced, among other things, syringes, a scale, and a bank bag containing baggies of a crystal-like substance, later confirmed to be methamphetamine.

{6} Defendant was indicted on one count of trafficking by possession with intent to distribute methamphetamine, contrary to NMSA 1978, Section 30-31-20 (2006), one count of criminal trespass, contrary to NMSA 1978, Section 30-14-1 (1995), and one count of possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). Defendant moved to suppress the evidence seized from his car, arguing that it was "obtained pursuant to an illegal arrest and subsequent inventory search . . . in violation of the Fourth and Fourteenth Amendments of the United States Constitution[.]"

{7} At the conclusion of the hearing on Defendant's motion to suppress, the district court granted the motion, finding that PSPD's investigatory detention of Defendant had ripened into a de facto arrest lacking probable cause, violating Defendant's right to be free from unreasonable seizure. This appeal resulted. *See* NMSA 1978, § 39-3-3(B)(2) (1972) (providing that the State may immediately appeal an order suppressing evidence if the district attorney certifies to the district court that "the appeal is not

3

taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding").

**DISCUSSION**

{8}    Defendant concedes—and we agree—that PSPD had reasonable suspicion to stop Defendant and place him in an investigatory detention. The only issue before us, then, is whether the character of PSPD's investigatory detention ripened into a de facto arrest, which, absent probable cause, constituted a violation of Defendant's Fourth Amendment rights.

**I.    Standard of Review**

{9}    "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "We review the trial court's ruling on [a d]efendant's motion to suppress to determine whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party." *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171 (internal quotation marks and citation omitted). "While we afford de novo review of the trial court's legal conclusions, we will not disturb the trial court's factual findings if they are supported by substantial evidence." *Id.*

## II. The Test for Determining the Reasonableness of an Investigatory Detention

{10} "It is well established that stopping an automobile and detaining its occupants constitute a seizure under the Fourth and Fourteenth Amendments." *State v. Skippings*, 2014-NMCA-117, ¶ 9, 338 P.3d 128 (internal quotation marks and citation omitted). The Fourth Amendment to the United States Constitution prohibits only seizures that are unreasonable. *See* U.S. Const. amend. IV. "Consistent with the reasonableness requirement of the Fourth Amendment, police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that particular person is engaged in criminal activity." *State v. Sewell*, 2009-NMSC-033, ¶ 13, 146 N.M. 428, 211 P.3d 885 (internal quotation marks and citation omitted). The reasonableness of an officer's actions during an investigatory detention "is determined by objectively evaluating the particular facts of the stop within the context of all the attendant circumstances." *Id.* ¶ 16.

{11} "There is no bright-line test for evaluating when an investigatory detention becomes invasive enough to become a de facto arrest." *Skippings*, 2014-NMCA-117, ¶ 14. The reasonableness of a detention "rests on the balancing of competing interests: the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to

5

justify the intrusion." *State v. Cohen*, 1985-NMSC-111, ¶ 19, 103 N.M. 558, 711 P.2d 3 (alteration, internal quotation marks, and citation omitted). Where the government's justification for the intrusion outweighs the nature and quality of the intrusion upon a defendant's right to privacy, the detention is more likely to be considered reasonable. *See State v. Robbs*, 2006-NMCA-061, ¶ 20, 139 N.M. 569, 136 P.3d 570 ("If the nature and extent of the detention minimally intrude on an individual's Fourth Amendment interests, opposing law enforcement interests can support a seizure based on less than probable cause." (internal quotation marks and citation omitted)). Conversely, where the intrusion is significant and the government's justification is not, the detention is considered a de facto arrest and, thus, an unreasonable seizure. *See State v. Werner*, 1994-NMSC-025, ¶¶ 16-21, 117 N.M. 315, 871 P.2d 971 (describing the character of the defendant's detention as "a significant intrusion" and holding that the detention was a de facto arrest because the government's purported justification for restricting the defendant to the degree it did failed to outweigh the intrusion).

{12} Regarding characterization of the government's interest—i.e., the government's justification for the intrusion—courts typically focus on one or both of two considerations: (1) the nature of the criminal activity suspected or afoot, *see*, *e.g.*, *Skippings*, 2014-NMCA-117, ¶ 17 (explaining that "[t]he government has a

6

significant interest in preventing the use and distribution of drugs like cocaine"); *see also State v. Lovato*, 1991-NMCA-083, ¶¶ 23-27, 112 N.M. 517, 817 P.2d 251 (holding, as a matter of law, that the intrusiveness of a stop by officers investigating a drive-by shooting was reasonable "in view of the level of danger the officers reasonably could assume to exist" given the nature of the crime being investigated); *cf. State v. Contreras*, 2003-NMCA-129, ¶ 14, 134 N.M. 503, 79 P.3d 1111 (holding that "the gravity of the public concern and the public interest served by the seizure" of a suspected drunk driver "weigh heavily in the [reasonableness] balancing test"); and/or (2) the specific reasons supporting particular intrusive actions taken by an officer during a detention. *See*, *e.g.*, *Werner*, 1994-NMSC-025, ¶ 17 (rejecting the claimed reasonableness of placing a suspect in a police vehicle—purportedly to prevent the suspect's flight and minimize risk of harm to the officer—when the officer knew where the suspect lived and there was no indication the officer, who had already removed a knife from the suspect, feared for his safety); *Skippings*, 2014-NMCA-117, ¶ 20 (concluding that officers did not act unreasonably by patting down and handcuffing the suspect, who had a history of violence, out of concern for officer safety); *State v. Flores*, 1996-NMCA-059, ¶ 17, 122 N.M. 84, 920 P.2d 1038 (explaining that "[t]he nature of the crime being investigated may also justify a patdown search").

{13}     In analyzing the defendant's privacy interest—specifically, the nature and quality of the intrusion thereon—courts consider and weigh numerous factors, including but not limited to: (1) the extent to which the suspect's freedom of movement is restricted, such as placement in the back of a police vehicle, *see Werner*, 1994-NMSC-025, ¶ 15, or being detained at gunpoint or through the use of handcuffs, *see Lovato*, 1991-NMCA-083, ¶¶ 4, 27-32; (2) the overall length of the detention and, relatedly, the officer's diligence in investigating in order to be able to confirm or dispel his suspicion, *see Werner*, 1994-NMSC-025, ¶¶ 13, 16; and (3) other fact-dependent factors, such as giving a defendant his *Miranda* rights, *see Skippings*, 2014-NMCA-117, ¶ 23, using a drug-sniffing dog, *see Robbs*, 2006-NMCA-061, ¶ 29, or relocating the defendant during the course of an investigation, *see Flores*, 1996-NMCA-059, ¶ 15 (holding that moving a suspect from the location of the initial traffic stop to a police warehouse in order to continue the investigation constituted a de facto arrest). No single factor is dispositive. *See Sewell*, 2009-NMSC-033, ¶ 18 (explaining that "[t]emporal duration is neither the controlling nor the only factor to be considered in assessing the reasonableness of the extent of an investigatory detention"); *Werner*, 1994-NMSC-025, ¶ 14 (explaining that "[a]lthough the back of a patrol car is not an ideal location for the purposes of an investigatory detention, detention in a patrol car does not constitute an arrest per se" (internal quotation marks

and citations omitted)); *Skippings*, 2014-NMCA-117, ¶¶ 20, 22-23 (explaining that "while we consider the fact that [the d]efendant was handcuffed, it is not determinative" and collecting cases supporting the proposition as well as explaining that giving a defendant *Miranda* rights does not automatically convert an investigatory detention into an arrest). We emphasize that the above-listed factors should be understood as illustrative, not an exhaustive list of possible considerations. *See Skippings*, 2014-NMCA-117, ¶ 14 (explaining that courts "are also guided by the circumstances in other cases in which investigative detentions have been held to be de facto arrests or impermissibly invasive").

{14}    On a defendant's motion to suppress evidence obtained without a warrant, the State bears the burden of establishing the reasonableness of the officer's conduct. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Warrantless seizures are presumed to be unreasonable and the [s]tate bears the burden of proving reasonableness." (internal quotation marks and citation omitted)). If the State fails to "present testimony or other evidence showing that the arrest or search met constitutional muster[,]" the defendant's motion should be granted. *State v. Ponce*, 2004-NMCA-137, ¶ 7, 136 N.M. 614, 103 P.3d 54.

## III. Whether PSPD's Investigatory Detention of Defendant Ripened Into a De Facto Arrest

{15}   We turn, now, to an application of this balancing test to the facts of this case. We first consider and characterize the government's interest because doing so sharpens the lens through which we analyze the reasonableness of the officers' particular actions and the overall nature and quality of the detention. Once we determine the weight of the government's interest, we determine whether the intrusiveness of PSPD's actions was justified by or outweighed the government's interest. *See Skippings*, 2014-NMCA-117, ¶¶ 17-18.

## A.   The Government's Justification for the Intrusion

{16}   PSPD's only basis for stopping and detaining Defendant was the yet-to-be-confirmed report from casino dispatch that Defendant was banned and therefore suspected of committing a criminal trespass, a misdemeanor offense. *See* § 30-14-1(E) ("Whoever commits criminal trespass is guilty of a misdemeanor."). Tellingly, the State argues that PSPD has "a significant interest in preventing criminal trespass on property under [its] jurisdiction" and that such interest "is even stronger under the circumstances of this case [based on the officers'] reasonable suspicion that Defendant was permanently banned from [the c]asino specifically for narcotics." Yet the State ignores the uncontradicted evidence that at the time Defendant was detained, neither Detective Chavez nor Officer Garcia acted upon knowledge that Defendant's

10

original ban was "for narcotics." While the State relies on the district court's finding that Detective Chavez "had received information through the dispatcher that [the c]asino Security had observed a male subject on casino property who they believe to have previously been banned from casino property for narcotics[,]" the evidence in the record, in fact, does not support this finding. When asked if he "remember[ed] exactly what dispatch said when they asked you to come to Sandia" and, specifically, if he remembered "that dispatch told you to come up for a banned subject who's banned for narcotics[,]" Detective Chavez responded, "I don't remember the ban for narcotics." The State's reliance on Defendant's assertion in his motion to suppress that "Sandia police officers were dispatched with the knowledge that . . . Defendant had possibly been previously banned from the casino for narcotic use or possession" is equally unavailing. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). And the State failed to present any testimony or evidence establishing that even if the officers knew that Defendant's ban was related to narcotics, they had reasonable suspicion that Defendant was engaged in drug-related criminal activity on June 1, 2012, which may have heightened PSPD's justification for intruding on Defendant's privacy interest. *See Pacheco*, 2008-NMCA-131, ¶ 20, 145 N.M. 40, 193 P.3d 587 ("Insofar as [the officer] had a

reasonable, articulable suspicion that drug-related criminality was afoot, the justification for the intrusion was substantial.").

{17} It is true that our cases have consistently characterized the government's interest in "preventing the use and distribution of drugs" as "significant," thereby presumptively justifying a higher level of intrusion during an investigatory detention. *Skippings*, 2014-NMCA-117, ¶ 17. *See State v. Pacheco*, 2008-NMCA-131, ¶ 20; *Robbs*, 2006-NMCA-061, ¶ 22. However, the fact that the case ended as a narcotics investigation does not mean it began as one. More importantly, the record does not support an inference that Detective Chavez was concerned about narcotics when he detained Defendant. And the State has not pointed to any authority suggesting that the government has a similar interest in the prevention of misdemeanor criminal trespass alone. As such, we assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Consequently, we are left only with the State's lesser, but certainly not non-existent, interest in enforcing misdemeanor trespass violations.

{18} Additionally, the State failed to present any evidence that the circumstances evolved over the course of PSPD's response in a way that would have justified a graduated response based on a more substantial government interest. *Cf. State v. Funderburg*, 2008-NMSC-026, ¶ 16, 144 N.M. 37, 183 P.3d 922 ("An officer's

12

continued detention of a suspect may be reasonable if the detention represents a graduated response to the evolving circumstances of the situation."). While the State attempted to portray Defendant as fleeing at the time he was stopped, the district court expressly found that "[t]he State did not present any evidence that Defendant was fleeing from apprehension, disruptive or not obeying commands by casino security or [PSPD]." This finding is substantially supported by Detective Chavez's testimony that (1) casino security reported seeing Defendant walking, not running, out of the casino, (2) Defendant appeared to simply be "proceeding along through the parking lot" just prior to being stopped by Officer Garcia, (3) Defendant's tires were not squealing while he was driving through the parking lot, and (4) Defendant stopped once Officer Garcia activated his emergency equipment and while still in the casino parking lot. Further, the State failed to call any witness to testify as to what Defendant had been told by casino security prior to PSPD's arrival—i.e., whether he was informed that security suspected him of committing criminal trespass and was told not to leave the premises. There is no evidence that Defendant was even aware that he was being investigated for—or that PSPD had been called regarding—a possible criminal trespass. All that Detective Chavez could establish was that Defendant had been in contact with casino security regarding the found wallet.

{19}   We are unpersuaded by the State's argument that the facts developed before the district court support a conclusion that the government's interest at the time it detained Defendant was "significant" and that the "law enforcement justification in this case was substantial." While we hold, here, that the government's interest in stopping a possible criminal trespass was less than "significant," our decision should not be read as establishing a categorical rule. Because the test of reasonableness is one based on the totality of the circumstances, *see Werner*, 1994-NMSC-025, ¶ 16, we leave open the possibility that under a different set of facts, the government's interest in preventing criminal trespass may be deemed "significant," thereby potentially justifying a more intrusive detention. *Cf. State v. McCormack*, 1984-NMCA-042, ¶¶ 16-20, 27, 101 N.M. 349, 682 P.2d 742 (affirming a journalist's conviction for criminal trespass of the Waste Isolation Pilot Plant and rejecting a First Amendment challenge to government-imposed access restrictions, which were based on the need to protect the property and people working thereon). As the next part of our discussion elucidates, we need not assign a specific descriptor—such as "minimal" or "important"—to the nature of the government's interest here.

**B.   The Nature and Quality of the Intrusion**

{20}   The State argues that "the intrusion on Defendant's liberty during the investigatory detention was slight or minimal" and reasons that "[a]lthough the

14

detention occurred in a police vehicle and included handcuffing Defendant, these intrusions are ameliorated by the brevity of the detention[.]" Based on our case law, we disagree.

{21} The focus of our inquiry, here, is whether the particular activities—i.e., intrusions—during the investigatory detention were "reasonably related to the circumstances that initially justified the stop" and whether there was "some reasonable justification" to support the intrusions. *Werner*, 1994-NMSC-025, ¶¶ 13, 15 (internal quotation marks and citation omitted). We also consider the length of Defendant's detention and the officers' diligence in confirming or dispelling their suspicion, which factors inform—but do not control—our characterization of the nature and quality of the detention and, ultimately, our determination of whether it was reasonable.

**1.     Restraint on Defendant's Freedom of Movement**

{22} Detective Chavez testified that Defendant was patted down, handcuffed, and put in the back of Officer Garcia's patrol car immediately upon exiting his vehicle. But there is no evidence that the officers knew that Defendant had a history of violence or feared for their safety, *see Skippings*, 2014-NMCA-117, ¶ 20; that Defendant attempted to leave the scene upon exiting his car, *see State v. Wilson*, 2007-NMCA-111, ¶¶ 3, 19, 142 N.M. 737, 169 P.3d 1184; or that Defendant was

unstable, swaying back and forth, or unable to safely stand on his own, *see id.* ¶ 3—all of which *may* be reasonable justifications for the officers' actions. We do not mean to suggest that these are the only reasons that could have justified the actions taken in this case. Rather, these examples provide guidance regarding what may establish the reasonableness of such intrusions. The key in this case is the complete absence of any evidence whatsoever suggesting there were mitigating circumstances that may have justified PSPD's intrusive actions upon Defendant.[1] And absent a reasonable justification for restricting a person's freedom of movement—particularly in as highly restrictive a way as occurred in this case—such intrusion is considered "significant." *See Werner*, 1994-NMSC-025, ¶ 16.

---

[1]The State effectively concedes this point, acknowledging that "the testimony may have been thin regarding the specific reasons that the officers placed Defendant in the back of a patrol car, patted Defendant down, and handcuffed Defendant," but attempts to justify this by pointing out that the district court granted Defendant's motion to suppress on a legal principle (de facto arrest) other than the one initially argued by Defendant (lack of exigent circumstances). **[RB 13 n.7]** We observe, however, that the State made no attempt to reopen testimony, continue the hearing, move the district court to reconsider its order, or take any other steps prior to appealing the suppression order to remedy the claimed "unfairness" the State says resulted. Additionally, the State has neither raised this as an issue on appeal—other than in a footnote in its reply brief—nor cited any authority suggesting that the district court acted improperly or that our review of the suppression order is somehow affected by this unusual circumstance. We therefore address this matter no further.

16

## 2. Duration and Diligence

{23} In an attempt to "ameliorate" these intrusions on Defendant's liberty in order to allow the balance to tip back in favor of the government's interest, the State relies on the brevity of the investigatory detention and Detective Chavez's diligence in confirming Defendant's ban from the casino. As to brevity, the State contends that "our Supreme Court has strongly suggested that a ten-minute detention will not rise to an arrest under any set of facts." To support this position, the State cites our Supreme Court's observation in *Sewell* that it had "found no reported case in which a New Mexico court has ever held that a ten[-]minute detention was impermissibly long in any set of circumstances where there was reasonable suspicion to make a roadside drug stop." 2009-NMSC-033, ¶ 17. The State also relies on this Court's recent observation in *Skippings* that all New Mexico cases that have held that a de facto arrest occurred involve "circumstances in which the defendant was detained for at least an hour." 2014-NMCA-117, ¶ 18. The State places heavy emphasis on the brevity of Defendant's detention and asks us to "give great weight" to this factor as well. We decline to do so because while the length of a detention is generally an important factor in determining whether it is reasonable, it is but one of a myriad factors that is neither controlling nor dispositive on the ultimate question of reasonableness. *See Sewell*, 2009-NMSC-033, ¶ 18; *Skippings*, 2014-NMCA-117,

17

¶¶ 18, 24. We also observe that *Sewell* and *Skippings* are factually distinguishable from the instant case in two key respects. First, neither involved the defendant being patted down, handcuffed, *and* placed in the back of a patrol car while handcuffed for any amount of time—i.e., the nature and quality of the intrusions in those cases were palpably less significant. *See Sewell*, 2009-NMSC-033, ¶¶ 6-7; *Skippings*, 2014-NMCA-117, ¶ 18. Second, both involved drug-related offenses, which, as we have already discussed, elevated the government's interest to "significant," thereby justifying a higher level of intrusiveness and making the detentions reasonable. *See Sewell*, 2009-NMSC-033, ¶ 20; *Skippings*, 2014-NMCA-117, ¶ 17.

{24} As to diligence, the State relies on *Werner*'s pronouncement that "[d]iligence in the investigation is key[.]" 1994-NMSC-025, ¶ 20. While we agree that the evidence indicates that Detective Chavez acted diligently to confirm Defendant's ban with casino security and that there is no evidence suggesting that Detective Chavez intentionally delayed confirmation in order to fish for evidence of other crimes, that alone is not enough to offset the significant intrusions upon Defendant's liberty or establish the reasonableness of the detention. *See id.* (explaining that "[i]f authorities, acting without probable cause, can seize a person, hold him in a locked police car . . ., and keep him available for arrest in case probable cause is later developed, the requirement for probable cause for arrest has been turned upside down"). And while

18

we observe that all of our prior cases holding that there was no de facto arrest also found that the officer had acted diligently, none of those cases involved the unique facts and circumstances present in this case. *See Skippings*, 2014-NMCA-117, ¶ 24; *Pacheco*, 2008-NMCA-131, ¶¶ 23-25; *Robbs*, 2006-NMCA-061, ¶ 29. As this case proves, an officer's diligence and ability to confirm or dispel his suspicions in a short amount of time may be insufficient to overcome the intrusions upon a defendant's privacy interest where such intrusions result in a highly-restrictive detention and are not supported by reasonable justification.

**CONCLUSION**

{25}	Viewing the evidence in the light most favorable to Defendant, the government's interest in investigating and stopping criminal trespass was far outweighed by the significant intrusion on Defendant's Fourth Amendment interests. We hold that PSPD's investigatory detention of Defendant ripened into an unconstitutional de facto arrest. The district court's order of suppression is affirmed.

{26}	**IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

19

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**


_____

**JULIE J. VARGAS, Judge**