The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **October 18, 2023**

**No. A-1-CA-39288**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**KOREY BUECKER a/k/a KOREY WILSON BUECKER,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ATTREP, Chief Judge.**

{1}     Following a conditional plea, Defendant Korey Buecker appeals the district court's denial of his motion to suppress. Defendant argues the district court erred by denying his suppression motion on two grounds. First, Defendant contends he was subjected to a de facto arrest without probable cause. Specifically, Defendant challenges his lengthy detention in a patrol car with handcuffs while a limited number of law enforcement officers conducted a nighttime investigation of gunshots fired and a roving domestic violence incident. Considering the totality of the circumstances—including that probable cause for Defendant's arrest arose within ten minutes of the challenged detention—we conclude the intrusion upon Defendant's Fourth Amendment right to privacy was outweighed by the government's substantial justification for the intrusion. We accordingly affirm the district court's determinations that Defendant's detention was reasonable and he was not subjected to an unlawful de facto arrest. Second, Defendant contends the waiver of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and his confession were not voluntary. Because Defendant has not advanced a developed or well-supported argument why the district erred, and we are otherwise satisfied that Defendant's waiver and confession were voluntary, we affirm the district court on this basis as well.

**BACKGROUND**

{2}    The following background is derived from the facts as found by the district court after the suppression hearing, which Defendant does not challenge, as well as officer testimony at the suppression hearing and various lapel camera footage received by the district court. *See* Rule 12-318(A)(4) NMRA (providing that the brief in chief "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive"); *State v. Lopez*, 2005-NMSC-018, ¶ 22, 138 N.M. 9, 116 P.3d 80 (providing that in the absence of findings from the district court, "we must draw from the record to derive findings based on reasonable facts and inferences and determine whether those facts and inferences support the conclusion reached by the court" (internal quotation marks and citation omitted)).

{3}    Officers Jorge Soriano and Crystal Marin of the Hobbs Police Department responded to a nighttime report of a "roving domestic" involving a woman yelling out of a truck pulling a box trailer in the 1300 block of East Llano Drive in Hobbs, New Mexico. Upon arriving, the officers did not find a woman or a truck. Shortly thereafter, the officers responded to another call—this time reporting gunshots in the 1300 block of East Green Acres Drive, only a couple of streets away. Driving down East Green Acres Drive, the officers saw an unoccupied truck with a box trailer parked in the road in front of a house but still running. The officers then saw Defendant emerge from the side yard of the house. Upon being approached and told

2

that he was going to be patted down, Defendant stated that he had two knives on his person. The officers recovered the two knives, but no firearm.

{4}    After being told that the officers were investigating a report of shots fired, Defendant said that he too had heard the shots. Defendant then gave confusing and contradictory answers to the officers' questions about the truck. Defendant told the officers that the truck belonged to his father, but denied driving the truck. Defendant claimed his father had been driving the truck, but when asked where his father was, Defendant responded that he should be at home in another part of the city. Defendant then claimed not to know who had been driving the truck or how it had gotten to the house on East Green Acres Drive. Officer Marin explained that the situation was "very concerning" given the report of a possible domestic involving Defendant's father's truck followed shortly thereafter by a report of gunshots in the area.

{5}    Meanwhile, other officers had arrived and begun investigating, searching in the dark with flashlights, apparently for shell casings, gunshot victims, and/or witnesses. One officer spoke with a neighbor who stated he heard gunshots and then saw a woman run into the house on East Green Acres Drive and a man run to the side of the house. Around this time, a shell casing was found in the yard of the house on East Green Acres Drive, where officers had located Defendant. The district court found, "Following [the] spent casing being discovered, Officer Soriano made the decision that due to the nature of the separate calls about a roving domestic and shots

fired, Defendant would be handcuffed in the back of his patrol car for the pendency of the investigation." Officer Soriano explained to Defendant that he needed to help out with the investigation in order to expedite it.

{6} After detaining Defendant in the backseat of his patrol car, Officer Soriano called in the license plate of the truck to dispatch and joined in the search. A little over eight minutes later, Officer Soriano spoke on the telephone with the registered owner of the truck, Defendant's father, who informed Officer Soriano that his truck was missing, that his son did not have permission to be driving it, that there were two firearms in the truck, and that he wanted to report the truck as stolen and to press charges. By this point, Defendant had been handcuffed and in the backseat of Officer Soriano's patrol car for just over ten minutes.

{7} Approximately forty-five minutes after Defendant was handcuffed and placed in the patrol car, Detective Ahmaad White began speaking with Defendant. Following an advisement of rights under *Miranda*, Defendant confessed to taking his father's truck without permission and discharging his father's 9 mm handgun, which was missing from the truck. After explaining to Defendant's parents, who were on scene by this time, that Defendant faced charges for unlawful taking of a motor vehicle, negligent discharge of a firearm, and possession of a firearm by a felon, Detective White formally arrested Defendant—approximately one hour after Defendant was handcuffed and placed in the patrol car.

4

{8} In the instant case, Defendant was charged with possession of a firearm by a felon (NMSA 1978, § 30-7-16(A)(1) (2019, amended 2022)) and negligent use of a firearm (NMSA 1978, § 30-7-4(A)(1) (1993)). Defendant moved to suppress his confession on the grounds that, inter alia, he was subjected to a de facto arrest not supported by probable cause when he was handcuffed and placed in the back of the patrol car for nearly an hour, and his *Miranda* waiver and confession were involuntary. Following the district court's denial of his motion and subsequent motion to reconsider, Defendant conditionally pled guilty to both crimes, reserving his right to appeal.

**DISCUSSION**

{9} A district court's ruling on a motion to suppress evidence presents a mixed question of fact and law. *State v. Skippings*, 2014-NMCA-117, ¶ 8, 338 P.3d 128. "We view the facts in the light most favorable to the [s]tate as the prevailing party, indulging all reasonable inferences in support of the district court's ruling and disregarding all evidence and inferences to the contrary." *State v. Pacheco*, 2008-NMCA-131, ¶ 3, 145 N.M. 40, 193 P.3d 587. We review de novo the district court's application of the law to the facts. *Skippings*, 2014-NMCA-117, ¶ 8. We additionally bear in mind that "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments that the district court has erred." *State v. Johnson*, ___-NMCA-___, ¶ 38, ___ P.3d ___ (A-1-CA-39367, June 30, 2023) (alteration,

5

internal quotation marks, and citation omitted)); *see also State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (explaining that "it is [the d]efendant's burden on appeal to demonstrate any claimed error below" given the presumption of correctness we accord the district court's rulings).

## I. De Facto Arrest

{10} Defendant does not contest that reasonable suspicion supported his detention, but argues that handcuffing and placing him in the back of a patrol car for nearly an hour transformed his lawful detention into a de facto arrest not supported by probable cause. The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures.[1] *See State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186. A warrantless seizure is presumptively unreasonable, *State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307, but a law enforcement officer may temporarily detain an individual for investigatory purposes, absent probable cause, if they have "reasonable and articulable suspicion that the law is being or has been broken." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). "When a detention

---

[1] Although Defendant briefly mentions Article II, Section 10 of the New Mexico Constitution in his brief in chief, he does not argue that it should be construed any differently than the Fourth Amendment. We therefore limit our analysis to the Fourth Amendment. *Cf. State v. Randy J.*, 2011-NMCA-105, ¶ 30, 150 N.M. 683, 265 P.3d 734 (declining to decide an undeveloped state constitutional argument).

exceeds the boundaries of a permissible investigatory stop, it becomes a de facto arrest requiring probable cause." *State v. Flores*, 1996-NMCA-059, ¶ 15, 122 N.M. 84, 920 P.2d 1038. As this Court previously has explained, "There is no bright-line test for evaluating when an investigatory detention becomes invasive enough to become a de facto arrest." *Skippings*, 2014-NMCA-117, ¶ 14. Our overarching inquiry—the reasonableness of the detention—requires us to weigh, on the one hand, the government's justification for the intrusion against, on the other hand, the nature and quality of the intrusion on the individual's Fourth Amendment interests. *See State v. Ortiz*, 2017-NMCA-062, ¶ 11, 400 P.3d 312. "Where the government's justification for the intrusion outweighs the nature and quality of the intrusion upon a defendant's right to privacy, the detention is more likely to be considered reasonable." *Id.* "Conversely, where the intrusion is significant and the government's justification is not, the detention is considered a[n unlawful] de facto arrest and, thus, an unreasonable seizure." *Id.* We examine the State's justification for the intrusion and then turn to the nature and quality of the intrusion on Defendant's Fourth Amendment interests.

**A.    Justification for the Detention**

{11}    In examining the justification for the detention, we "typically focus on one or both of two considerations: (1) the nature of the criminal activity suspected or afoot, . . . and/or (2) the specific reasons supporting particular intrusive actions taken by

an officer during a detention." *Id.* ¶ 12 (citations omitted). Focusing solely on the nature of the criminal activity, Defendant contends the State's justification for detaining him was exceedingly minimal because, according to him, "At most, both calls involved completed petty misdemeanors." We cannot agree with Defendant's assessment of the nature of the criminal activity suspected or the seriousness of the situation confronting the officers. Prior to Defendant's challenged detention, Officers responded to gunshots fired in a residential neighborhood at night; nearby, the vehicle reportedly involved in a potential domestic violence incident was found abandoned, still running in the street. The officer's investigation thus involved potentially violent felony offenses—e.g., shooting at or from a motor vehicle, shooting at a dwelling house, or aggravated assault with a deadly weapon—with the possibility of victims. Moreover, by the time of Defendant's challenged detention, Defendant, the only suspect to the crimes being investigated, had given nonsensical and evasive answers to the officers' questions; a spent casing had been found in the yard of the house where Defendant was located; and a neighbor had confirmed the presence of a man running to the side of that house at the time gunshots were fired. *See Ortiz*, 2017-NMCA-062, ¶ 18 (providing that evolving circumstances during the course of an investigation may justify "a graduated response based on a more substantial government interest"). In light of all of this, we conclude that the government's justification for the detention was substantial. *See State v. Lovato*,

1991-NMCA-083, ¶ 27, 112 N.M. 517, 817 P.2d 251 (holding, as a matter of law, that the intrusiveness of a stop was reasonable "in view of the level of danger the officers reasonably could assume to exist" given the nature of the crime (a drive-by shooting) being investigated); *cf. Skippings*, 2014-NMCA-117, ¶ 17 (holding that drug-related criminal activity provided a "substantial" governmental justification for the intrusion).

## B.      Nature and Quality of the Intrusion

{12}     In analyzing the nature and quality of the intrusion on the individual's Fourth Amendment interests, courts consider and weigh various factors, including the character or level of the intrusion on the individual, as well as the length of the detention and, relatedly, the diligence of the police in conducting their investigation. *See Ortiz*, 2017-NMCA-062, ¶ 13; *Skippings*, 2014-NMCA-117, ¶ 14.

{13}     We first consider the level of the intrusion. Here, it was undoubtedly high because Defendant was placed in handcuffs and put in the back of a patrol car. Nevertheless, "[a]lthough the back of a patrol car is not an ideal location for the purposes of an investigatory detention, detention in a patrol car does not constitute an arrest per se." *State v. Werner*, 1994-NMSC-025, ¶ 14, 117 N.M. 315, 871 P.2d 971 (internal quotation marks and citation omitted). Similarly, the fact that Defendant was handcuffed is not determinative and does not automatically transform his detention into a de facto arrest. *See Skippings*, 2014-NMCA-117, ¶ 20. As

9

discussed, officers were faced with a dangerous and potentially volatile situation involving a roving domestic violence incident and the discharge of a firearm at night in a residential neighborhood. Because Defendant was the only suspect but no firearm was found on his person, officers logically could have concluded that Defendant might access a firearm if not secured. Given this danger, and the apparent need for Officers Marin and Soriano to join in the investigation and search for potential gunshot victims and witnesses,[2] we cannot say that the level of detention was unreasonable. *Compare Lovato*, 1991-NMCA-083, ¶ 27 (concluding that, where "the officers had just received a report of a drive-by shooting and that minutes later they encountered and stopped a vehicle believed by them to be the one described in the broadcast," "the level of intrusion under these circumstances was not inappropriate in view of the level of danger the officers reasonably could assume to exist"), *with Ortiz*, 2017-NMCA-062, ¶ 22 (concluding that the defendant's detention in a patrol car while handcuffed was unreasonable, in part because there was "no evidence that the officers knew that [the d]efendant had a history of violence or feared for their safety").

---

[2]Officer Soriano testified at the suppression hearing that five officers—the number on the scene—were the minimum number of officers needed to search the area for gunshot victims and other evidence, but that ten would be more ideal. The district court found, and Defendant has not challenged, that there were "limited officers" available to conduct the investigation and search for victims and witnesses.

{14} We next consider the length of the detention and the diligence of the investigation. *See Pacheco*, 2008-NMCA-131, ¶ 19 (addressing these factors together because "both rest on the same underlying premise, an impermissibly protracted detention"); *Skippings*, 2014-NMCA-117, ¶ 24 (addressing both factors together). As for the length of delay, both parties agree that the relevant period of detention began when Defendant was handcuffed and placed in the back of the patrol car, but they diverge on how long that period lasted. The State contends it lasted approximately forty-five minutes—until Defendant made his confession to Detective White—while Defendant contends it lasted nearly an hour—until his formal arrest by Detective White. We do not agree with either party. *Cf. State v. Nash*, 2007-NMCA-141, ¶ 5, 142 N.M. 754, 170 P.3d 533 (providing that "[d]espite the failure of both parties to cite the correct law, we apply the controlling cases as the issues are properly before this Court"). As this Court observed in *Skippings*, what matters is the amount of time until probable cause for arrest has arisen.[3] *See* 2014-

---

[3]Defendant acknowledges this principle in his brief in chief by repeatedly citing the notion that a de facto arrest must be supported by probable cause. *See, e.g.*, *State v. Hernandez*, 1997-NMCA-006, ¶ 27, 122 N.M. 809, 932 P.2d 499 ("When a detention becomes a de facto arrest, a showing of probable cause is required to support it."); *State v. Flores*, 1996-NMCA-059, ¶ 15, 122 N.M. 84, 920 P.2d 1038 ("When a detention exceeds the boundaries of a permissible investigatory stop, it becomes a de facto arrest requiring probable cause."); *see also, e.g.*, *United States v. Baron*, 860 F.2d 911, 917 (9th Cir. 1988) (providing that a de facto arrest supported by probable cause is lawful); *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987) (same).

NMCA-117, ¶ 15 (focusing on period of time until probable cause arose even though formal arrest occurred later); *see also id.* ¶ 14 ("When an officer with reasonable suspicion *but without probable cause* detains an individual in an unreasonable manner, the detention may amount to a[n unlawful] de facto arrest, rather than an investigatory detention." (emphasis added) (internal quotation marks and citation omitted)).

{15}     The district court did not make any explicit determinations about the duration of Defendant's detention or when probable cause arose. Viewing the facts in the light most favorable to the district court's ruling, the amount of time Defendant spent handcuffed and in the back of the patrol car before probable cause arose was approximately ten minutes. *See id.* ¶ 15 (viewing the evidence in the light most favorable to the prevailing party in determining when probable cause arose and the relevant period of detention); *cf. Lopez*, 2005-NMSC-018, ¶ 22 (providing that, in the absence of findings from the district court, "we must draw from the record to derive findings based on reasonable facts and inferences" (internal quotation marks and citation omitted)). By that point, Defendant's father had told Officer Soriano that his truck (as well as two firearms) were missing, Defendant did not have permission to take his truck, and he wanted to press charges. Upon learning this information, Officer Soriano had probable cause to arrest Defendant for at least one felony offense. *See State v. Duffy*, 1998-NMSC-014, ¶ 69, 126 N.M. 132, 967 P.2d

807 ("Probable cause exists when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been, or is being, committed." (internal quotation marks and citation omitted)), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110; *see also, e.g.*, NMSA 1978, § 30-16D-1(A) (2009) (providing that unlawful taking of a motor vehicle, which is committed when a defendant takes a motor vehicle without the owner's consent, is at least a fourth degree felony).

{16}     As for the diligence of the investigation, Defendant offers little in the way of argument, maintaining again that the investigation, at most, involved "possibly one or two misdemeanor offenses that were no longer occurring," and broadly asserting that "[t]he facts of this case do not bespeak a narrow and diligent investigation." But, as discussed, Defendant's characterization of the incident belies the seriousness of the situation confronting the officers. And Defendant's assertion that the investigation was not narrow or diligent is made without further explanation. Such an argument is inadequate to warrant our review. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be"). Nevertheless, based on an independent review of the record, we are satisfied that the officers did not delay their investigation or that they were otherwise

unreasonable in conducting it. *See Skippings*, 2014-NMCA-117, ¶ 24 (providing that "[t]he length of the detention (ten minutes) was reasonably limited to the time required to perform all of the[ investigative] activities" and "[t]here is nothing to indicate that the agents delayed the investigation or were otherwise unreasonable in conducting the investigation").

**C.     Totality of the Circumstances**

{17}     Although the intrusion upon Defendant's privacy rights was considerable, we cannot say that it outweighed the government's substantial justification for the intrusion, considering the offenses being investigated and the potential danger faced by officers. *See Ortiz*, 2017-NMCA-062, ¶ 17 (providing that a "significant" government interest "presumptively justif[ies] a higher level of intrusion during an investigatory detention"); *cf. State v. Contreras*, 2003-NMCA-129, ¶ 14, 134 N.M. 503, 79 P.3d 1111 (holding that "the gravity of the public concern and the public interest served by the seizure" of a suspected drunk driver "weigh heavily in the [reasonableness] balancing test"). All in all, under the particular factual circumstances of this case and in light of the argument presented by Defendant on appeal, we affirm the district court's determinations that Defendant's detention was reasonable and he was not subjected to an unlawful de facto arrest. *See Ortiz*, 2017-NMCA-062, ¶ 19 (providing that "the test of reasonableness is one based on the totality of the circumstances"); *see also Johnson*, ___-NMCA-___, ¶ 38 (placing the

14

burden on the appellant to demonstrate error); *Aragon*, 1999-NMCA-060, ¶ 10 (same).

## II.  Voluntariness of *Miranda* Waiver and Confession

{18}  Defendant next argues that the district court erred by denying his motion to suppress his statements, arguing that his *Miranda* waiver and confession were involuntary. Regardless of whether voluntariness is examined within the context of the Fifth Amendment, for *Miranda* waivers, or within the context of the due process clause of the Fourteenth Amendment, for confessions, "the benchmark is the absence of governmental coercion or police overreaching." *State v. Fekete*, 1995-NMSC-049, ¶ 48, 120 N.M. 290, 901 P.2d 708 (internal quotation marks and citation omitted); *see also id.* ¶¶ 33, 50 (equating the inquiry of whether there was governmental coercion or police overreaching under the Fifth Amendment and the due process clause, notwithstanding the fact that "[a] claim that the police coerced a statement requires a different analysis than a claim that an accused voluntarily waived [their] Fifth Amendment protections under *Miranda*").

{19}  Defendant fails to persuade us the district court erred in concluding that his *Miranda* waiver or confession were the product of governmental coercion or police overreaching. His argument in this regard is undeveloped and lacking citation to any persuasive authority. Defendant merely sets out the general test for determining whether a waiver or statement is "voluntary." Then, after listing tactics used by

officers that Defendant characterizes as "coercive," he baldly asserts, without further analysis, that such tactics "overbor[e his] will and rendered any subsequent statement involuntary." Defendant offers no elicitation of how the particular tactics used in this case amounted to official coercion. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (refusing to address undeveloped, conclusory arguments, reasoning that "[a] party cannot throw out legal theories without connecting them to any elements and any factual support for the elements" (internal quotation marks and citation omitted)). And as the State correctly points out in its answer brief, Defendant does "not cite a single case holding that statements even remotely similar to those made by [the officers] constitute coercion." *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (providing that an appellate court "will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists"). Again, such an argument is inadequate to warrant our review. *See Fuentes*, 2010-NMCA-027, ¶ 29; *State v. Stevenson*, 2020-NMCA-005, ¶ 20, 455 P.3d 890 ("We will not address an undeveloped argument or perform [a d]efendant's research for him."). Nevertheless, based on an independent review of the record and relevant case law, we are satisfied that Defendant's *Miranda* waiver and confession were not the product of governmental coercion or police overreaching. *See, e.g.*, *State v. Barrera*, 2001-NMSC-014, ¶ 27, 130 N.M. 227, 22 P.3d 1177 (concluding the defendant's *Miranda*

waiver and confession were voluntary where law enforcement did not make threats or promises of leniency or use physical force, notwithstanding that the defendant was questioned in close and restrictive quarters by two officers). We therefore reject Defendant's contention that the district court erred in concluding his waiver and confession were voluntary.

**CONCLUSION**

{20}    For the foregoing reasons, we affirm the district court's denial of Defendant's motion to suppress.

{21}    **IT IS SO ORDERED.**

_____

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**ZACHARY A. IVES, Judge**