This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS FOR THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                          **No. A-1-CA-33977**

**CARL FREEMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRENCH, Judge.**

{1}     Defendant Carl Freeman appeals his conviction for possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23 (2011). On

appeal, Defendant argues his trial counsel was ineffective because he did not file a motion to suppress the State's evidence, and if such motion was filed, it would have likely altered the trial result. Because Defendant has made a prima facie showing of ineffective assistance of counsel by demonstrating both that his trial counsel's performance was deficient and this deficient performance caused Defendant prejudice, we remand this case for an evidentiary hearing on whether Defendant received effective assistance of counsel.

**BACKGROUND**

{2} Early in the morning of June 5, 2013, Defendant allegedly slashed the tires of a vehicle in the parking lot of the Santa Ana Star Casino. A casino security supervisor contacted the Santa Ana Police Department (SAPD) and Officer Herman Sanchez was dispatched to assist. Officer Sanchez watched security footage showing a man getting out of a car, slashing the tires of a van, and leaving the area. By rewinding the video, casino surveillance was able to track the individual who slashed the tires back to when he was in the casino using his player's card, and thereby identify him as Defendant.

{3} On June 10, 2013, casino security recognized Defendant playing machines in the casino and brought him to the security office. Casino security called the SAPD and Officer Sanchez was again dispatched to the casino. Upon arriving at the security office, Officer Sanchez explained why he was there and noted

Defendant was "extremely nervous." Mindful that Defendant was suspected of slashing tires and therefore may be armed with a knife, and concerned for his own safety, Officer Sanchez asked Defendant to stand up, place his hands behind his back, and placed Defendant in handcuffs. Officer Sanchez read Defendant his *Miranda* rights and Defendant stated he understood them. As Officer Sanchez began to perform a patdown for weapons, Defendant started to struggle. During this struggle, both Officer Sanchez and casino security observed a small plastic baggy containing a white crystalline substance fall out of Defendant's pocket. In response to the bag falling on the ground, Defendant stated that he "did not want to go to jail for the meth." Officer Sanchez then took Defendant into custody and transported him to the police station. A forensic scientist later identified the contents of the bag as methamphetamine.

{4}	Defendant's trial counsel did not move to suppress the bag of methamphetamine before trial. Instead, after the State rested its case, Defendant's trial counsel told the court he sought "to suppress any evidence that was intending to be admitted by the State." Defendant's trial counsel argued Defendant was arrested without probable cause when he was handcuffed and read his *Miranda* rights. The State responded that moving for suppression of evidence half-way through trial was untimely under *City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 25, 285 P.3d 637. Defendant's trial counsel responded, "I don't know whether

3

I'm arguing a [m]otion to [s]uppress or a directed verdict, because the State discussed it." Defendant's motion was denied and he was convicted of possession of a controlled substance.

**DISCUSSION**

{5}    As the sole grounds for reversal, Defendant argues his trial counsel was ineffective because the failure to file a timely motion to suppress constitutes deficient performance and Defendant was prejudiced by this failure. The State argues Defendant's counsel engaged in a viable strategy by seeking to "confuse the issues" because the facts and the law were not in Defendant's favor, and Defendant failed to establish a reasonable probability that, had a motion to suppress been heard Defendant would have prevailed.

{6}    "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. "To evaluate a claim of ineffective assistance of counsel, we apply the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984)[.]" *Dylan J.*, 2009-NMCA-027, ¶ 36. "That test places the burden on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *Id.* "We refer to the prongs of this test as the reasonableness prong and the prejudice prong." *State v. Howl*, 2016-NMCA-084, ¶ 10, 381 P.3d 684 (internal quotation marks and citation omitted). "If facts necessary to a full determination

4

are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 (internal quotation marks and citation omitted). "A prima facie case of ineffective assistance of counsel is made on appeal where: (1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State v. Smith*, 2016-NMSC-007, ¶ 62, 367 P.3d 420 (internal quotation marks and citation omitted).

**I.      Reasonableness of Failing to Bring a Motion to Suppress**

{7}      "Where, as here, the ineffective assistance of counsel claim is premised on counsel's failure to move to suppress evidence, [the d]efendant must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *State v. Mosley*, 2014-NMCA-094, ¶ 20, 335 P.3d 244 (internal quotation marks and citation omitted). Defendant argues the facts support a motion to suppress because the bag of methamphetamine fell out of his pocket after he was illegally arrested and a reasonably competent attorney would have known to challenge whether the state had probable cause for an arrest through a suppression motion. The State argues a

5

competent attorney could have decided a motion to suppress was unwarranted in this case and without development of the record, it is uncertain whether such a motion would have succeeded. We first address whether the facts in this case support, not guarantee the success of a motion to suppress.

**{8}** To "effectuate the constitutional right to be free from unreasonable search and seizure[,]" the government is denied "the use of evidence obtained pursuant to an unlawful search." *State v. Gutierrez*, 1993-NMSC-062, ¶ 50, 116 N.M. 431, 863 P.2d 1052. This protection extends "to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *State v. Yazzie*, 2016-NMSC-026, ¶ 18, 376 P.3d 858 (internal quotation marks and citation omitted). "Arrests and investigatory stops are seizures invoking Fourth Amendment protections [under the United States Constitution]; . . . [a]n arrest must be supported by probable cause and an investigatory stop must be supported by reasonable suspicion." *State v. Jason L.*, 2000-NMSC-018, ¶ 14, 129 N.M. 119, 2 P.3d 856 (citation omitted). "A person has been seized only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *State v. Garcia*, 2009-NMSC-046, ¶ 37, 147 N.M. 134, 217 P.3d 1032 (alteration, omission, internal quotation marks, and citation omitted).

**{9}** The facts show Officer Sanchez walked into the security office to find Defendant nervously waiting for him. After Officer Sanchez explained why he was

6

there, he asked Defendant to stand up, turn around, and proceeded to both handcuff and read Defendant his *Miranda* rights. Upon being handcuffed by a police officer, any reasonable person would believe they were no longer free to leave and Defendant was unquestionably seized at this point. To be a legal seizure, Officer Sanchez needed either reasonable suspicion to justify an investigatory stop or probable cause to justify an arrest. *See Jason L.*, 2000-NMSC-018, ¶ 14.

**A.    Reasonable Suspicion**

{10}    "The police may make an investigatory stop in circumstances that do not rise to probable cause for an arrest if they have a reasonable suspicion that the law has been or is being violated." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Id.* The identification of Defendant in surveillance footage and through the security database as the individual who slashed the tires in the casino parking lot was sufficient evidence to give Officer Sanchez reasonable suspicion Defendant had committed a crime, specifically criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963). This reasonable suspicion was sufficient to justify an investigatory stop and an ensuing investigatory detention.

## B.      De Facto Arrest

{11}      Defendant argues he was arrested when he was handcuffed and read his *Miranda* rights. The State argues the handcuffing and reading of *Miranda* rights did not necessarily convert the investigatory detention into a de facto arrest. "There is no bright-line test for evaluating when an investigatory detention becomes invasive enough to become a de facto arrest[;]" however, "[w]hen an officer with reasonable suspicion but without probable cause detains an individual in an unreasonable manner, the detention may amount to a de facto arrest, rather than an investigatory detention." *State v. Skippings*, 2014-NMCA-117, ¶ 14, 338 P.3d 128 (internal quotation marks and citation omitted). When determining whether a detention was unreasonable, "there are several factors that we consider, including (1) the government's justification for the detention[;] (2) the character of the intrusion on the individual[;] (3) the diligence of the police in conducting the investigation[;] and (4) the length of the detention." *Id.* (internal quotation marks and citation omitted).

{12}      The State argues it was justified in detaining Defendant because of its interest in preventing destruction of private property. While not of record, it is unlikely the tire or tires had a value in excess of $1,000, and the State does not argue so. Therefore, the crime Defendant was suspected of committing was a petty misdemeanor. *See* § 30-15-1 (describing criminal damage to property worth less

8

than $1,000 as a petty misdemeanor). As this Court explained in *State v. Ortiz*, the state's interest in preventing misdemeanors cannot be discounted, but is less than the significant interest the state has in preventing the use and distribution of drugs as described in our other cases discussing de facto arrests. 2017-NMCA-062, ¶¶ 17-19, 400 P.3d 312; *see Skippings*, 2014-NMCA-117, ¶ 17 (holding in part the "government has a significant interest in preventing the use and distribution of drugs like cocaine"). As such, it justifies less intrusion than instances where a police officer's justification for detention is based on the state's interest to prevent the use and distribution of drugs. Additionally, in *Ortiz* the defendant was "suspected of committing a criminal trespass, a misdemeanor." 2017-NMCA-062, ¶ 16. As Defendant was only suspected of committing a petty misdemeanor in this case, the State's justification for the character of its intrusion was even weaker here.

{13} We balance the government's justification for the intrusion "against the character of the intrusion on a person's right to be free from police interference." *State v. Robbs*, 2006-NMCA-061, ¶ 21, 139 N.M. 569, 136 P.3d 570. In balancing the character of the intrusion, we also look at the length of detention and diligence of the investigation. *See Skippings*, 2014-NMCA-117, ¶ 14. The facts show that after a brief explanation of Officer Sanchez's presence, Defendant was handcuffed, read his *Miranda* rights, and patted down for weapons. The State argues that

9

handcuffing a defendant with a history of violence "does not transform the detention into an arrest" and that this Court "avoid[s] unrealistic second-guessing of police officers' decisions." *Id.* ¶¶ 20-21. While this is true, for the purposes of this analysis we are only concerned with whether the facts supported the filing of a motion to suppress. The facts in the record do not indicate whether Officer Sanchez knew Defendant had any history of violence and the State does not point us to any such evidence. The State also argues Officer Sanchez handcuffed Defendant because Defendant seemed nervous and had previously used a knife to slash the tires of a van. As to nervousness, our Supreme Court has expressly "caution[ed] that while nervousness may be a relevant factor in the calculus, we do not consider nervousness alone sufficient to justify a frisk for weapons." *State v. Vandenberg*, 2003-NMSC-030, ¶ 31, 134 N.M. 566, 81 P.3d 19. "[I]nstead it is the articulation by the officer of specific reasons why the nervousness displayed by the defendant caused the officer to reasonably believe that his or her safety would be compromised." *Id.* (internal quotation marks and citation omitted). However, the facts here show Officer Sanchez only knew that five days earlier Defendant was armed with a knife after leaving his vehicle and that the knife was employed to slash the tires of another vehicle. Officer Sanchez offers no other articulation of his concerns for his personal safety and the State points to no other evidence of record that Officer Sanchez knew or suspected Defendant was regularly armed with a

10

knife. While we are sensitive to the safety concerns of our officers who regularly risk life and limb to ensure the safety of our community, knowledge that at some point in time an individual illegally damaged property is not the same as knowledge that an individual has a history of violence and regularly harms others. The facts do not show how long Defendant would have been handcuffed absent his decision to resist Officer Sanchez and we decline to speculate either way on this factor.

{14}    Officer Sanchez had reasonable suspicion to detain Defendant for questioning regarding the criminal damage to property that occurred on June 5, 2013. However, given the facts of record in this case and balancing the justification for the State's intrusion against the character of the intrusion, we conclude there was a sufficient factual basis for Defendant's trial counsel to challenge whether the investigatory detention was converted into a de facto arrest. We note that while these facts support a motion to suppress, the success of said motion was not guaranteed.

{15}    This conclusion is particularly compelling when considered from Defendant's point of view. Defendant was interrupted by casino security while playing machines and escorted to a security office. Defendant waited with casino security until Officer Sanchez showed up to question him about a tire slashing from five days earlier. After Officer Sanchez explained he was there to investigate

11

the tire slashing, he asked Defendant to stand up, turn around, and placed him in handcuffs. Defendant was then read his *Miranda* rights. Officer Sanchez did not probe for more information, verify identity, or take any other investigatory action. Instead, Officer Sanchez proceeded almost directly to handcuffing Defendant and reading him his *Miranda* rights. Would a reasonable citizen reasonably think they were not under arrest at this point? Moreover, given these facts, would a reasonably competent attorney forego a motion to suppress? We think not.

{16}    Despite not having the benefit of an evidentiary hearing on a motion to suppress, the record supports Defendant's contention that his trial counsel acted unreasonably in failing to bring a motion to suppress. This conclusion is bolstered by the fact Defendant's trial counsel attempted to belatedly pursue an effort to suppress the evidence, by oral motion, after the State rested its case. Clearly, Defendant's trial counsel thought the motion had merit, otherwise he would not have brought the motion at all. The State argues Defendant's trial counsel was attempting to "confuse the issues" and he could have reasonably determined that a motion to suppress was unwarranted prior to trial. However, the gravamen of our test focuses on what a reasonably competent attorney would have done, not what the allegedly ineffective counsel decided to do. We can think of no plausible, rational strategy or tactic for a reasonably competent attorney to fail to file a potentially meritorious motion to suppress.

12

**{17}** Because the facts support the filing of a motion to suppress and a reasonably competent attorney could not have decided such a motion was unwarranted, we conclude Defendant has shown his trial counsel's performance was deficient because he failed to file a motion to suppress.

**II. Prejudice of Failure to Bring a Motion to Suppress**

**{18}** To make a prima facie showing of ineffective assistance of counsel, Defendant is still required to show the deficient performance caused prejudice. *See State v. Smith*, 2016-NMSC-007, ¶ 62, 367 P.3d 420. In this case, Defendant must show that absent counsel's deficient performance, there is a reasonable probability the "result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 27, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). "Where a meritorious motion to suppress key evidence could weaken the prosecution's case against the defendant, counsel's failure to make such a motion may prejudicially affect the defendant." *Mosley*, 2014-NMCA-094, ¶ 30.

**{19}** Defendant was convicted of possession of a controlled substance. This required the State to prove, in part, that Defendant had the bag of methamphetamine in his possession. *See* NMSA 1978, 30-31-23(A) (2011) ("It is unlawful for a person intentionally to possess a controlled substance[.]"). A

13

successful motion to suppress would have excluded the bag of methamphetamine and the testimony of the expert identifying the contents of the clear plastic bag as methamphetamine. It would have then been difficult for the State to prove beyond a reasonable doubt that Defendant possessed methamphetamine without discussing the bag of methamphetamine itself. The trial testimony presented by the State focused on the contents of and circumstances through which the State found the bag of methamphetamine in the first place. The evidence of record shows that before the bag fell from his pocket, Defendant was only suspected of having slashed tires.

{20}    If the bag of methamphetamine was excluded from trial, nearly all of the State's case for possession of a controlled substance would have vanished. Without this key evidence, our confidence that the results of the trial, if it even took place, would have been the same, is undermined. *See Lytle*, 2001-NMSC-016, ¶ 27. For this reason, we conclude Defendant was prejudiced because of his trial counsel's failure to file a motion to suppress.

**CONCLUSION**

{21}    Defendant has made a prima facie case for ineffective assistance of counsel and we accordingly remand for an evidentiary hearing on whether he received effective assistance of counsel.

{22}    **IT IS SO ORDERED.**

14

_____

**STEPHEN G. FRENCH, Judge**

**I CONCUR:**

_____
**JULIE J. VARGAS, Judge**

**J. MILES HANISEE, Judge (dissenting).**

15

**HANISEE, Judge (dissenting).**

{23} I respectfully dissent, and take this opportunity to reiterate my view regarding ineffective assistance of counsel claims on direct appeal. *See State v. Castro*, 2016-NMCA-085, ¶¶ 58-59, 381 P.3d 694 (Hanisee, J., dissenting) (stating that "[t]he majority's analysis also depends on [unsupported] assumption[s]" regarding both the legal viability of an unfiled motion and unknown defense trial strategy and noting our Supreme Court's "preference that ineffective assistance of counsel claims be presented and resolved in collateral proceedings"), *rev'd by* 2017-NMSC-027, ¶ 36, 402 P.3d 688 (holding that "[b]ecause there are insufficient facts in the record, [the d]efendant's argument . . . is more properly brought through a habeas corpus petition" and that "an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case" (internal quotation marks and citation omitted)).

{24} More and more frequently, this Court is invited to conclude—on records largely devoid of salient facts regarding a given defense attorney's pretrial or trial representation—that a prima facie showing of ineffective assistance of counsel has been made, and that immediate remand is needed to flesh out unknown facts that might or might not lend themselves to the conclusion that trial counsel was constitutionally deficient. Because of the availability of habeas proceedings designed to examine this exact question, I consider the requisite prima facie

16

showing to be one that should be tightly enforced. Indeed, when asked to prematurely resolve the question of attorney effectiveness on direct appeal, we frequently—as here—can do little more than speculate regarding a variety of things that cannot be known from the trial record, including: (1) whether missing facts would render a given motion an attorney did not file more or less likely to have been successful had the motion been filed; (2) whether the defense strategy employed during trial proceedings was reasonably different from that which a defendant later found to be guilty wishes would instead have been pursued; (3) whether the State could have established facts repudiating the unraised contention or presented a winning legal argument in opposition to a given unfiled motion; and (4) whether the motion was not filed simply because a constitutionally effective attorney would have acted reasonably to predict its failure on the merits. While hardly a complete missing-items list from a given record on appeal, the foregoing unknowns illustrate why the direct appellate process does not lend itself to second-guessing attorney performance. Nor do I believe that busy district courts should be compelled—other than in rare circumstances and without reliance on factual assumptions—to undertake such innately ancillary proceedings before a conviction has even been affirmed. *See State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799 ("[W]e have held when the record does not contain all the facts necessary for a full determination of the issue, an ineffective assistance of counsel

17

claim is more properly brought through a habeas corpus petition[.]" (internal quotation marks and citation omitted)). *But see State v. Miera*, 2018-NMCA-020, ¶ 40, 413 P.3d 491 ("This is not a case where a defendant makes a vague assertion that his attorney [was ineffective; rather, the d]efendant placed evidence in the record that defense counsel failed to pursue [evidence of an] alternate perpetrator [and evidence that] called into question [the alleged victim's] credibility.").

{25}    While we know little from the trial record about many of the considerations pertinent to the question of whether Defendant's attorney was effective or ineffective in not filing a motion to suppress evidence, that which we know suggests that (1) Defendant was recognized by security personnel as the individual that left the casino five days earlier armed with the knife he then used to slash the tires of another casino patron's vehicle; (2) Defendant's appearance and identity had been ascertained based upon surveillance video and his having used his player's card prior to that crime; (3) when spotted back at the same casino five days later, Defendant was escorted from the casino floor to a security office, where a police officer arrived, handcuffed Defendant, provided *Miranda* warnings, and subjected Defendant to a patdown search; and (4) during the patdown search, Defendant began to struggle with officers and evidence of a separate narcotic crime fell from his pocket.

18

{26}    With little more than these facts attendant to the circumstances in which Defendant was detained, I cannot agree that a prima facie case has been established that Defendant's attorney was constitutionally ineffective, and that the identified deficiency was prejudicial insofar as—the standard employed by the majority—the "result of the proceeding would have been different." Majority Op. ¶ 18. Regarding these facts, the majority first holds that "reasonable suspicion [existed] to detain Defendant for questioning regarding the criminal damage to property that occurred." Majority Op. ¶ 14. If correct, the legality of Defendant's initial detention could not have been the basis of a successful motion to suppress. But the majority next turns around to conclude, despite a seemingly brief period of time between the detention and the drug evidence falling from Defendant's pocket, that what it maintains was a justified initial detention might well have morphed into an impermissible de facto arrest or otherwise became unconstitutional.

{27}    While I express no opinion as to the probable outcome of the unfiled motion, the majority's reliance upon *Ortiz*, 2017-NMCA-062, is misplaced. In *Ortiz*, this Court reiterated that courts are to balance the competing interests of governmental justification and the nature of the intrusion, including its duration and consideration of the nature of the crime on which it is premised. While "[n]o single factor is dispositive[,]" *id*. ¶ 13, the majority misses the importance of that which distinguishes *Ortiz* from this case: the belief on the part of the officers that

19

Defendant had recently possessed a dangerous weapon in the casino, the seemingly quick discovery of an additional narcotic crime, and an investigatory detention that—absent the sort of developed record for which habeas proceedings are well suited—appears less invasive than that analyzed in *Ortiz*. Quite dissimilarly, in *Ortiz* the defendant was detained pursuant to a vehicle stop in a casino parking lot, handcuffed and placed in a patrol car despite the officers having no information regarding the defendant's possession of weapons on the casino premises that might make them fear for their safety, and further detained despite no narcotic evidence being discovered on his person during a patdown search. *Id*. ¶¶ 5, 22-23 ("The key in this case is the complete absence of any evidence whatsoever suggesting there were mitigating circumstances that may have justified [the casino officers'] intrusive actions[,]" and noting that "drug-related offenses . . . elevate[] the government's interest to significant, thereby justifying a higher level of intrusiveness" (internal quotation marks omitted)). Considering the many factual differences between this case and *Ortiz*, my view is that Defendant has failed to establish that he was prejudiced by his attorney's inaction, and has therefore failed to present a prima facie case of ineffective assistance of counsel.

{28}     As in *Castro*, when our Supreme Court stopped this Court's mistaken remand in a circumstance that entailed similarly hypothetical possibilities regarding attorney performance, my view remains that in the absence of an

20

existing, factually developed record upon which a prima facie determination of prejudice can be established and not hypothesized, remand on direct appeal is improper. The majority instead creates unnecessary responsibilities in our already over-tasked district courts, encourages the proliferation of this sort of theoretical point of direct appeal, and prematurely bypasses proceedings designed to address this very sort of constitutional claim.

_____

**J. MILES HANISEE, Judge**

21